## VAN DEUZEN *v.* TRUSTEES OF PRESBYTERIAN CONGREGATION.

### September, 1867.

Where land is conveyed to individuals as trustees of a religious corporation, in trust for the purposes of the corporation the statute of trusts vests the legal title in the corporation; and an action to recover possession should be brought in the name of the corporation, and the individual grantees should not join as plaintiffs.

Christopher Van Deuzen, L. Bancroft, the Methodist Episcopal Church at Fort Edward, and S. B. Lee, sued the trustees of the Presbyterian Congregation at Fort Edward, to recover possession of a church edifice and land.

The court found that in 1828, at the village of Fort Edward, (there never having theretofore been any house of worship, or church organization at or near the village) the minister of a Methodist Episcopal Church of Glen's Falls, did, in conjunction with members of that church living at Fort Edward, organize and incorporate, under the Statute, "the Methodist Episcopal Church of Fort Edward," and the certificate of incorporation, acknowledged, was forwarded to the county clerk for record; but was lost and never recorded.

IV.—30

The present plaintiffs, Van Deuzen, Bancroft and others were chosen the first trustees of the corporation; and on April 28, 1829, one Walter Rogers and his wife conveyed, with full covenants, to them by name, and designating them trustees of "the Methodist Episcopal Church of Fort Edward, and their successors in office, parties of the second part, in consideration of seventy-five dollars," the receipt whereof was duly acknowledged,—and did grant, . . . "to the said parties of the second part, and to their successors in office, in trust, for the uses and purposes thereinafter named, and described, forever," the land described in the complaint, "for the purpose of erecting a house or place of worship for the use of the Methodist Episcopal Church ; and in the further trust and confidence that the said church shall at all times enjoy the undisturbed right and privilege on these premises of the preaching of God's holy word and the administration of the ordinances and the discipline of said church according to its established usages and customs; with the single pledge and understanding of the parties of the second part that, when said house is not occupied by said Methodist church, it shall be opened for the service of any other recognized Christian denomination." The deed was duly acknowledged and recorded, Nov. 1, 1831. Rogers was owner in fee, and was in possession of the premises at the time of said conveyance. Subsequently, in 1829 and 1830, a house of worship was erected on the lot, at a cost of about two thousand five hundred dollars, by subscriptions, raised mostly by the adherents and members of the Methodist church, and partially from adherents of the Presbyterian church in that vicinity, and some from other persons. The building was constructed by persons styling themselves "the building committee of the Methodist Episcopal church," and said commitee were members and adherents of that church. On its completion it was dedicated as a Methodist Episcopal church. Upon a stone over the door were engraved the words, "First Methodist Episcopal Church of Fort Edward." From its dedication, in 1830, to May, 7, 1859, the trustees of the Methodist society had charge of the building, and during the time one of them, or the sexton of said society, uniformly kept the key. During this time the building was occupied by the

Methodists on Sundays in the forenoon as their house of worship, and sometimes in the afternoon. Frequently in the afternoon and evenings it was occupied by the Presbyterians, and ministers of that denomination settled in the adjoining towns usually officiated at such times; and when so used, application was made to the sexton or trustee of the Methodist church for the key.

There was no organized society of Presbyterians at Fort Edward, until Jan. 17, 1854. On April 24, 1854, the defendants in this action became duly incorporated as a religious body under the name of "The Trustees of the Presbyterian Congregation at Fort Edward."

In March, 1853, three of the trustees claiming to be "trustees of the Methodist Episcopal church of Fort Edward" made application to the County Court, under the statute, to sell the said church and lot upon which it was situated; which sale was ordered, and the proceeds directed to be appropriated to the purchase of a new site or the erection of a new church in said village, as the trustees should deem advisable. Pursuant to the order, the said trustees, on May 26, 1853, executed to the plaintiff Lee, a deed for said church and church lot, for the consideration of one thousand two hundred dollars, paid by said Lee by conveying a lot for a new site valued at six hundred dollars, and paying six hundred dollars in cash, which cash was applied to the materials of the new church. Lee, at the time he took this deed, knew the terms of the Rogers deed aforesaid.

After the execution of this deed to Lee, the Methodists continued to occupy this building as a house of worship, paying Lee rent for its use till May 7, 1859, when they commenced occupying their new church edifice erected in said village, then just completed.. This new edifice and its lot were paid for out of the avails of the old one, and by voluntary subscriptions from Methodists and others. From May 7, 1854, until August the same year, Lee kept the custody of the key of the old church, and during that period the property was not used for any purpose. In August, 1854, the defendants, without the permission of Lee or of any of the plaintiffs, broke open the old church and occupied it for religious worship, have

ever since continued to occupy it for that purpose, and have repaired it and made permanent improvements upon it to the extent of some one thousand two hundred dollars, under protest and objection from Lee. Three of the first trustees, and the grantees in the deed from Rogers and wife, were dead in 1854; and the two survivors, Van Deuzen and Bancroft (plaintiffs in this action), on October 24, 1854, executed to Lee a deed of the old church premises. About the year 1844, a bell was procured by general subscription among the Methodists, Presbyterians and others, at an expense of about four hundred dollars, and placed in this old church. The petition for that purpose was circulated by the minister and officers of the Methodist church, and the subscriptions therefor were obtained by their procurement and solicitation. Three of the trustees of that church, about the time of the completion of the new church, removed this bell and placed it in the new church, where it still remains.

As conclusions of law, the court found that the Methodist Church had lawful title to the property and was entitled to the possession. That neither of the other plaintiffs had a right to recover the same in this action. That the conveyance under said order of the court, was insufficient to pass the legal title to Lee. That the equitable title was in said Lee, by reason of said proceedings for the sale of the same, and the payment of the purchase money by him, and he is entitled to a conveyance thereof, in due form, by said Methodist corporation. But the legal title remained in the Methodist Church. That the defendant has no right legal or equitable, entered into the premises unlawfully, and unjustly withheld possession. That the bell referred to was the property of the Methodist church; and was rightfully removed to the new church, and retained by plaintiff. That the Methodist church was entitled to judgment against the defendant for the possession and for costs. That the complaint be dismissed as to the three plaintiffs, Van Deuzen, Bancroft, and Lee, with costs and disbursements to the defendant against them.

*The supreme Court,* at general term, affirmed the judgment; entered accordingly. Defendants appealed.

Van Deuzen *v.* Trustees of Presbyterian Congregation.

*James Gibson,* for defendants, appellants ;—Cited 2 *R. S.* 607, 5 ed. 490 ; 5 ed. 552 ; *L.* 1844, c. 158, § 2 ; 3 *R. S.* 3 ed. 246 ; Jackson *v.* Leggett 7 *Wend.* 377 ; Paddock *v.* Brown, 6 *Hill,* 530 ; First Baptist Society *v.* Rapalee, 16 *Wend.,* 605 ; Burt *v.* Farrar, 24 *Barb.* 518 ; Rex *v.* Wade, 1 *Barn. & Ad.* 861 ; Garlick *v.* Sangster, 9 *Bing.* 46 ; White *v.* Willard, 1 *Watts,* 42 ; Fager *v.* Campbell, 5 *Id.* 288 ; 2 *Cow. & Hill notes,* (Van Cott's ed.) 794 ; Welch *v.* Joy, 13 *Pick.* 482 ; Peckham *v.* Henderson, 27 *Barb.* 207, 213 ; Bishop *v.* Cook, 13 *Barb.* 326 ; Robinson *v.* Clifford, 2 *Wash. C. C.* 1, 2 ; McSpedon *v.* Mayor, 7 *Bosw.* 601 ; S. C. 20 *How. Pr.* 395 ; McCullough *v.* Moss, 5 *Den.* 567 ; Farmer's L. & T. Co. *v.* Carroll, 5 *Barb.* 613 ; Brady *v.* Mayor &c., of N. Y. 2 *Bosw.* 173 ; S. C. 7 *Abb. Pr.* 234 ; 16 *How. Pr.* 435 ; Valk *v.* Crandall, 1 *Sandf. Ch.* 179 ; Burt *v.* Farrar, 24 *Barb.* 518 ; Buffalo & Pittsburg R. R. Co. *v.* Hatch, 20 *N. Y.* 159 ; Jackson *v.* Corey, 8 *Johns.* 385 ; *Co. Lit.* 8 *a,* 9 *b* ; *Shep. Touchstone,* 237, 505 ; *Com. Dig. tit. Capacity, b.* 1 ; Jackson *ex dem.* Hardenberg *v.* Schoonmaker, 2 *Johns.* 230 ; Jackson *v.* Hartwell, 8 *Id.* 424 ; Hornbeck *v.* Westbrook, 9 *Id.* 73 ; Baptist Association *v.* Hart, 4 *Wheat.* 1 ; Green *v.* Dennis, 8 *Conn.* 292 ; Jackson *v.* Myers, 3 *Johns.* 388 ; Same *v.* Davenport, 18 *Id.* 295 ; affir'd, 20 *Id.* 537 ; *Touch.* 226, 509, and 1 *Mad. ch.,* 445 ; *Cruise on Uses,* 8, § 1 *et seq.; Gilbert on Uses,* 80, 44 ; 1 *Rep.* 25 ; Crary *v.* Goodman, 12 *N. Y.* (2 *Kern.*) 266 ; Dobson *v.* Pearce, *Id.* 156 ; Vander Volgen *v.* Yates, 3 *Barb. Ch.* 242 ; * 4 *Kent Com.* 303 ; 299, 300 ; Burgess *v.* Wheat, 1 *W. Bk.* 180, 1 *Eden.* 195 ; *Wood Institute,* 260 ; 2 *Bl. Com.* 336 ; *Cruise Dig. tit. Trust,* c. 1, §§ 1, 2, 38 ; Fisher *v.* Fields, 10 *Johns.* 495 ; Attorney General *v.* Hewer, 2 *Vt.* 387 ; Bagshaw *v.* Spencer, 2 *Atk.* 557 ; *Willards Eq.* 412 ; Gregory *v.* Henderson, 4 *Taunt.* 772 ; Stanford *v.* Hobart, 1 *Bro. Parl. Cas.* 288 ; Hopkins *v.* Hopkins, 1 *Atk.* 593 ; Andrew *v.* N. Y. Society, 4 *Sandf.* 156 ; S. C. 174–5 ; 2 *Story Eq.* §§ 1287, 1289 ; *Hill on Trustees,* 525, 190 ; In re Mechanics' Bank, 2 *Barb.* 446 ; Attorney General *v.* Mayor of Coventry, 2 *Brown Par. Cas.* 235 ; 1 *Kern.* 253 ; Sanderson *v.* White, 18 *Pick.* (*Mass.*) 328 ;

---

* Aff'd in 9 *N. Y.* (5 *Seld.*) 219.

Attorney General *v.* Hobert, *Fin. L.* 259; S. C. 4 *Viner Abr.* 499; Love *v.* Eade, 4 *Id.* 449; King *v.* Packer, 9 *Cush.* (*Mass.*) 81; Hadley *v.* Hopkins Academy, 14 *Pick.* (*Mass.*) 39, 240; *Ex parte* Greenhouse, 1 *Mad.* 92; Porters' Case, 1 *Co.* 22 *b.*; *Story Eq.* § 1143, note 2; § 1200; § 1183; note and cases cited; 2 *Jarman* (*Pow.*) *Dev.* 32; Hawley *v.* James, 5 *Paige*, 318;* Gibbs *v.* Ramsey, 2 *Ves. & B.* 297; Briggs *v.* Penny, 3 *Mac. & Gord.* 546; Morrill *v.* Lawson, 4 *Vin. Abr.* 501; *Cruise Dig.* tit. Use, c. 4 § 2; *tit. Remainder*, c. 5 § 1, *et seq.* and § 16; Wells *v.* Fenton, *Cro. Eliz.* 826; Attorney General *v.* Clarke, *Amb.* 422; Jones *v.* Williams, *Id.* 657; 22 *Vin. Abr. tit. Uses*, (E.) 3, 247; 4 *Id. tit. Char. Uses*, 482 (B.) 17; Waller *v.* Childs, *Amb.* 524; Attorney General *v.* Cock, 2 *Ves.* 273; Potter *v.* Chapin, 6 *Paige*, 650; Attorney General *v.* Kell, 2 *Beav.*, 579; *Tevine on Trusts*, 105; 600; Shotwell *v.* Mott, 2 *Sandf. Ch.* 46; Attorney General *v.* Cowber, 2 *Sim & Stu.* 93; Attorney General *v.* Laws, 8 *Hare*, 32; Milford *v.* Reynolds, 1 *Phil.* 185; S. C. 19 *Eng. Ch. Cas.* condensed 191, note 2; Man *v.* Ballet, 4 *Vin. Abr. tit. Char. Uses.* (D.) pl. 7; S. P. St. John's Coll. *v.* Platt, *Ib. Saunders on Uses*, 63, 128; Jackson *v.* Alexander, 3 *Id.* 484; Jackson *v.* Sebrind, 16 *Id.* 515; Chudleigh's Case, 1 *Rep.* 120; Jackson *v.* Cadwell, 1 *Cow.* 622; Jackson *v.* Florence, 16 *Johns.* 47; 4 *Cruise Dig. tit.* 32, c. 10, § 22; Corwin *v.* Corwin, 6 *N. Y.* (2 *Seld.*) 342; 324; Jackson *v.* Cary, 16 *Johns.* 302; Bowen *v.* Bell, 20 *Id.* 338; Dashiel *v.* Attorney General, 6 *H. & J.* 1, 5; *Id.* 392; Congregational Society of Halifax *v.* Stark, 34 *Vt.* 249; Still *v.* Trustees of Lansingburg, 16 *Barb.* 107; Robertson *v.* Bullions, 11 *N. Y.* (1 *Kern.*) 243; *Id.* 254, 6; Petty *v.* Tooker, 21 *Id.* 267; affirming Parish of Belport *v.* Tooker, 29 *Barb.* 256; Burrel *v.* Association R. Ch., 44 *Id.* 282; *Touch.* 106, 182, 197; 1 *Cruise* tit. 12, Trust, c. 2 § 2; *Com. Dig. Uses*, 992; 4 *Com. Dig. tit. Uses* (L.) citing, *Dal.* 112; *Id.* (K.) citing 1 *Le.* 195; 5 *Bac. Abr.* 382, 1 pl. 4, citing Bent's Case, 2 *Le.* 19; 2 *Fonb. Eq.* 122, *note*; Grovenor *v.* Hallam, *Amb.* 643; Beckwith's Case, 2 *Rep.* 58, a; Grant *v.* Morse, 22 *N. Y.* 325;

---

*Rev'd in 16 *Wend.* 61.

Nelson *v.* Ingersoll, 27 *How. Pr.* 4; Brown *v.* N. Y. Central R. R. Co. 26 *Id.* 32; Smith *v.* Coe, 29 *N. Y.* 666.

*A. D. Wait,* for plaintiffs, respondents;—Cited Vielie *v.* Osgood, 8 *Barb.* 131, 132, 133, 127, 128; Baptist Church *v.* Witherell, 3 *Paige,* 296; Dutch Church *v.* Mott, 7 *Id.* 77; Adair *v.* Lott, 3 *Hill,* 182; 1 *R. S.* 72, 78, §§ 10, 12; 80, § 12; Reformed Dutch Church *v.* Veeder, 4 *Wend.* 497; 2 *R. S.* 4 ed. 136, § 46; 135, § 44; Welch *v.* Allen, 21 *Wend.* 147; Nicoll *v.* Walworth, 4 *Den.* 385; Davis *v.* Garr, 6 *N. Y.* (2 *Seld.*) 124; 1 *Hilliard,* 299, § 9; 304, § 55; 353, § 20; *Sanders on Uses,* 63, 128; Jackson *v.* Sisson, 2 *Johns. Cas.* 323; Parsons *v.* Miller, 15 *Wend.* 561; 20 *Coms.* 459; Jackson *v.* Cory, 8 *Johns.* 385; 2 *Blackst. Com.* 184 (marg. page); Swick *v.* Sears, 1 *Hill,* 17; Parsons *v.* Miller, 15 *Wend.* 561, 564; N. Y. Ins. Co. *v.* Thomas, 3 *Johns. Cas.* 4; Turner *v.* Burrows, 5 *Wend.* 547; Robertson *v.* Bullions, 11 *N. Y.* (1 *Kern.*) 256, 259, 260; Steere *v.* Steere, 5 *Johns. Ch.* 3; Voorhees *v.* Pres. Church of Amsterdam, 17 *Barb.* 107; Reddington *v.* Reddington, 3 *Ridg. Irish Parl.*; Lamphugh *v.* Lamphugh, 1 *P. Wms.*; Taylor *v.* Taylor, 1 *Atk.* 386; Dean *v.* Dean, 6 *Conn.* 285; Jewett *v.* Jewett, 16 *Barb.* 150; 4 *Kent Com.* 131, 17: Newkirk *v.* Newkirk, 2 *Cai.* 352; Schermerhorn *v.* Nagus, 1 *Den.* 448; Converse *v.* Kellogg, 7 *Barb.* 596; Hall *v.* Tuffts, 18 *Pick.* 455; Kane *v.* Gott, 24 *Wend.* 667; affirming 7 *Paige,* 521; Ayres *v.* Methodist Church, 3 *Sandf.* 372, 377, 378; Beckman *v.* People, 27 *Barb.* 263, 272, 273, 291, 305; see 3 *Sandf.* 372; Livingston *v.* Stickles,* 8 *Paige,* 404; 2 *R. S.* 4 ed. 133, §§ 14, 15; Hawley *v.* James, 16 *Wend.* 61; reversing 5 *Paige,* 318; Hone *v.* Van Schaick, 20 *Wend.* 566; affirming 7 *Paige,* 221; Revisers' Notes, 3 *R. S.* 2 ed. 572, 612; Yates *v.* Yates, 9 *Barb.* 345, 346; King *v.* Rundle, 15 *Id.* 145; Andrew *v.* N. Y. Bible & Prayer Book Soc., 4 *Sandf.* 181, 2, 3; *Shep. Touch.* 236; *Co. Litt.* 3 a; Baptist Ass. *v.* Hart, 4 *Wheat.* 1; Hornbeck *v.* Westbrook, 9 *Johns.* 74; Bonbett *v.* Cowdrin, 9 *Mass.* 254; Barker *v.* Word, *Id.* 419; Lockwood *v.* Weed, 2 *Conn.* 287; Hornbeck *v.* Sleight, 12 *Johns.* 198; Spencer *v.* Field, 10

---

*Affirmed in 7 *Hill,* 253.

*Wend.* 92, 93 ; Stone *v.* Gordon, 3 *M. & S.* 322 ; Craig *v.* Wells, 11 *N. Y.* (1 *Kern.*) 323; 12 *Barb.* 460, 461; Nicoll *v.* N. Y. & Erie R. R. Co., 12 *N. Y.* (2 *Kern.*) 121, 130; 2 *Pet. U. S.* 346 ; 8 *Cooke*, 68, cited in Parsons *v.* Miller; Rogers *v.* Murray, 3 *Paige*, 390 ; White *v.* Carpenter, 2 *Id.* 238, 240 ; Sayre *v.* Townsends, 15 *Wend.* 647 ; Putnam *v.* Ritchie, 6 *Paige*, 390 ; Wetmore *v.* Roberts, 10 *How. Pr.* 55 ; 2 *Story Eq. Jur.* §§ 799, 1237, 1238 ; Craig *v.* Wells, 11 *N. Y.* (1 *Kern.*) 315, all the judges concuring.

BY THE COURT.—DAVIES, Ch. J. [After reciting the findings.]—The appeal brings up for review the correctness of the judgment rendered in favor of the plaintiff, The Methodist Episcopal Church of Fort Edward, against the defendants. We are not embarrassed by the question, discussed in the opinions of the learned judges of the fourth district. When this case was first before them, upon the report of a referee before whom the same had been tried, that referee reported as a fact, that "The Methodist Episcopal Church of Fort Edward" was never incorporated, and never had a legal existence. The supreme court held, that the evidence did not authorize the referee to find this fact, and that court reversed the judgment of the referee and ordered a new trial. Upon the second trial the facts were found by the court as already detailed. We have now the fact found that said church in or about the year 1828, was duly incorporated pursuant to the statute of the State of New York in such case made and provided. The Methodist Episcopal church at Fort Edward was, therefore, a legal corporation ; and, being such, the grant of the land in dispute, made on April 28, 1829, by Walter Rogers and his wife, to the then trustees of the said church, for its use, vested the title of the lands in that corporation.

1 *R. S.* 727, § 47, declared, that every person who, by virtue of any grant, assignment or devise, now is or hereafter shall be entitled to the actual possession of lands and receipt of the rents and profits thereof, shall be deemed to have a legal estate therein of the same quality and duration, and subject to the same conditions, as his beneficial interest.

In Welsh *v.* Allen, 21 *Wend.* 147, the supreme court held,

that in that case the trust being merely nominal in 1830, when the Revised Statutes went into operation, it became executed in the *cestui que trust* by virtue of the forty-seventh section of the article on uses and trusts (already quoted) and consequently the plaintiff held the legal title and was entitled to maintain that action. The head-note to this case is: When a trust of lands is wholly nominal the trust becomes executed by the statute in the *cestui que trust,* who may maintain ejectment for the recovery of the lands in his own name, without a previous conveyance from the trustee. To the same effect is the case of Nicol *v.* Walworth, 4 *Den.* 385.

Upon the facts found by the referee, the Methodist church corporation have never parted with the legal title to the lands in dispute so vested in them, and that corporation is therefore the proper party to maintain this action.

These views are decisive of this case, and lead to an affirmance of the judgment of the supreme court.

All the judges concurred, except BOCKES, J., absent.

Judgment affirmed, with costs.