(3 Misc. Rep. 187.)

REYNAL et al. v. THEBAUD et al.

(Supreme Court, Special Term, New York County. April 11, 1893.)

WILLS—CONSTRUCTION—LIFE TENANTS AND REMAINDER-MEN.

> Under the provision of a will devising a sum to trustees to divide into as many parts as testator had grandchildren, and to invest it in certain bonds, and to collect the interest or income from each of said parts, and to pay such part of the net interest and income from each part to the support of each child as was necessary until he became of age, and accumulate the balance, and, after he became of age, to pay to him the whole of the net interest and income from the part set aside for him,

and, on the decease of such child, to pay over such part to his issue, the loss resulting from shrinkage in the value of the bonds should be deducted from the income paid the grandchildren.

Action by Jules Reynal and others, as trustees under the will of Nathaniel D. Higgins, deceased, against Mathilde Eugenie Thebaud and others, for a judicial settlement of plaintiffs' accounts.

Carter & Ledyard, for plaintiffs.
Elliot & S. Sidney Smith, for defendant Thebaud.
Walter Trimble, for defendant Reynal.

LAWRENCE, J. Nathaniel Higgins died on the 11th day of January, 1882. He left a will, which was duly admitted to probate by the surrogate of this county. The second clause of the will reads as follows:

"I give and bequeath unto my executors hereafter named, or to such of them as shall qualify and undertake the execution of this, my will, and the survivors or survivor of them, the sum of one million and five hundred thousand dollars, in trust, nevertheless, and to and for the uses and purposes following, that is to say: To divide the same into as many parts or shares as there may be children, or children of any predeceased, of my daughter, Nathalie Florence Reynal, living at the time of my decease, such grandchild or grandchildren of my said daughter to represent the part or share to which his or her or their parent would have been entitled to the benefit of under this clause of my will, if living at the time of my decease, and invest and keep each of said shares or parts thereof invested at interest on bond and mortgage or real estate, or in the public stocks or funded debt of the city or county of New York, or of the city of Brooklyn, or of the state of New York, or of the United States of America, and collect and receive the interest and income arising therefrom, and pay and apply the net interest and income arising from each of said parts or shares, or so much thereof as may be necessary for that purpose, to the support, maintenance, and education of the child or grandchild for whom such part or share may be set apart and invested, until such child or grandchild shall attain the full age of twenty-one years, and accumulate the balance of such interest and income, and, on such child or grandchild attaining the age of twenty-one years, to pay him or her all such accumulated interest or income, and, from and after the time such child or grandchild shall attain the age of twenty-one years, to pay and apply the whole of the net interest and income arising from the part or share set apart for the benefit of such child or grandchild to the use of such child or grandchild during his or her natural life, and, on the decease of such child or grandchild, to assign, transfer, and pay over such part or share to the issue of such child or grandchild surviving him or her, and to the issue of any child of him or her so dying, who may have previously died leaving issue him or her surviving, such issue to take the same part or share which his, her, or their parent or parents would have taken if living. If, however, said child or grandchild shall die without leaving issue surviving him or her, then to assign, transfer, and pay over said part or share held or directed to be held for the benefit of the child or grandchild so dying to his or her brothers and sisters then surviving him or her, and to the issue of such of them as may have previously died, leaving issue surviving, such issue to take the part or share his, her, or their parent would have taken if living."

At the time of the testator's death there were four children of his daughter, Nathalie F. Reynal, all of whom were minors. One of these children has since died, and the amount of the trust has been since held by the plaintiffs, as trustees for the three surviving children, who are the defendants in this action. This action is brought

for the purpose of obtaining a judicial settlement of the accounts of the plaintiffs, as such trustees, since the 10th day of January, 1890, the date of the previous settlement of the accounts in the surrogate's court. The defendant Mathilde Eugenie Thebaud became of age on the 3d day of February, 1891, and the defendant Nathaniel Claude Reynal, on the 15th day of February, 1892; and as to those defendants the time has arrived when the plaintiffs must account in respect to the trust fund created by the second clause of the testator's will. It is conceded that the accounts of the investments and payments made by the plaintiffs are correct, but it is objected that the trustees were not authorized to set up what is termed in said accounts a "sinking fund." This fund, as is stated by plaintiffs' counsel in his brief, was established by the trustees to make good a deficiency in the principal of the investments held for each of the said defendants, arising from the fact that the said principal has been invested by the trustees in interest-bearing government and city bonds and stocks purchased by them at a premium, and which premium has been gradually diminishing, by reason of the fact that said bonds and stocks are approaching maturity. It appears that during the first eight years of the administration of these trustees, from 1882 to 1890, the trustees made no effort to maintain a sinking fund. In 1890, when they began to prepare for the accounting which would be requisite in 1891, (when Mathilde Eugenie Thebaud attained the age of 21 years,) the trustees discovered that the principal of the three trust funds held by them had been impaired by the shrinkage in the values of the securities held by them. This shrinkage is shown on pages 7, 8, and 9 of the first account, and amounted to $7,090.48 in each trust. The trustees accordingly transferred from the accumulated income in their hands $7,090.48 to principal in the case of each of the trusts, and began to establish a sinking fund for each security, so as to prevent future shrinkage in the principal of these funds. It is the action of the trustees in making the above transfer, and in establishing this sinking fund, which is now criticised.

The question involved in this case, therefore, is whether the plaintiffs, as trustees for the defendants under the will of their grandfather, Nathaniel D. Higgins, should pay over to the defendants, as life tenants, the whole amount of the income collected by them in each year, or whether they should retain out of the income which accrued prior to the time when each of the defendants became or becomes of age a sufficient amount to gradually retire the premiums paid by them for the securities in which they have invested the trust funds, and pay over to the defendants as cestuis que trustent the net income or interest after deducting that amount.

This case has been very thoroughly discussed by counsel in the briefs which they have submitted, and authorities conflicting, or apparently conflicting, have been cited by them to sustain their respective positions; but, after all, the case must be determined by following the elementary rule as to the construction of wills, by ascertaining the intention of the testator from the language used

by him.   Applying that rule, I think that it is clear that the testator intended to preserve the corpus of the trust fund for the benefit of his grandchildren.   It must be assumed that a man of large fortune, who was competent to make, and did make, a will, executed as far back as March 2, 1878, knew that the government bonds and city stocks, in which he directed his executors to invest the $1,500,000 fund, could not be purchased without paying large premiums therefor, and that, unless provision was made by the trustees from year to year to meet the shrinkage in the value of the securities which must ensue as they approached maturity, the corpus of the fund would be most materially impaired.   Having this knowledge, what does the testator direct the trustees to do?   He directs them to—

"Collect and receive the interest and income arising from each of said parts or shares, and pay and apply the net interest and income arising from each of said parts or shares to the support, maintenance, and education of each of said children, until each of said children shall attain the full age of twenty-one years, and accumulate the balance of such interest or income, and, from and after the time such child shall attain the age of twenty-one years, to pay and apply the whole of the net interest and income arising from the part or share set apart to the use of said child, and, on the decease of such child, to assign, transfer, and pay over such part or share to the use of such child."

It will be observed that, upon one of the children attaining majority, the trustees are not directed to pay to such child the whole of the accumulated interest or income, but the whole of the net accumulated interest or income.   The net interest or income is to be applied to the support and maintenance of each child, and the accumulation of such net income over and above the sum required for its support is to be paid to the child when majority is attained. The direction as to the payments to be made to each of the children after they have become of age is also to apply the whole of the net interest or income arising from each share; and, when the child dies, the trustees are directed to pay over such part or share to the issue of such child.   There is nothing in the will from which it can fairly be inferred that the testator, when he used the word "net," meant "gross" income; and where, in the direction of the final payment to the issue of each child upon the death of the child, the testator refers to "such part or share," there is nothing from which it can be inferred that he did not mean the whole share, unimpaired and unreduced.   The sum which he had directed the trustees to invest in the bonds and stocks mentioned in the second clause of the will was $1,500,000, which he directed to be divided into as many shares or parts as there might be children of his daughter.   It is the amount of one of the shares resulting from the division of that sum by the number of children of Mrs. Reynal that the testator intended should go to the issue of each child upon the death of the child.

I have examined the various authorities relied on by counsel with care, but deem it sufficient to say that, where a result apparently different from that at which I have arrived has been reached,

the judgment of the court has been based upon the fact that from the language of the testator it was clear that he intended that the loss resulting by shrinkage in the value of the securities for which a premium had been paid should fall upon the remainder-men. As I read the will in this case, no such intention is manifest. Draw findings accordingly, and settle on notice.